IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANNE M. DIXON, | : | CIVIL ACTION |
|---|---|---|
| Plaintiff, | : | |
| v. | : | |
| ALL STATE INSURANCE COMPANY, | : | No. 11-1925 |
| Defendant. | : | |

## MEMORANDUM OPINION

**TIMOTHY R. RICE**  December 21, 2012
**U.S. MAGISTRATE JUDGE**

Anne M. Dixon, a pro se litigant, has sued All State Insurance Company ("Allstate") for bad faith, fraud, and breach of contract. See Compl. at 10, 12, 14 (doc. 1). Allstate seeks summary judgment. Dixon opposes and seeks "direction from the court"; disqualification of Allstate's counsel; disclosure of Allstate's legal theories; bifurcation of the trial; an evidentiary hearing; and an extension to supplement her opposition to Allstate's summary judgment motion.[1] See generally Opposition.

---

[1] Although Dixon is a licensed attorney, I construe Dixon's motion to strike as her brief in opposition to summary judgment, even though it was untimely filed with the clerk. See Pl.'s Mtn. to Strike Def.'s Mtn. for Summ. J. & Requests Other Relief (doc. 44) ("Opposition"); Erickson v. Pardus, 551 U.S. 89, 95 (2007) (requiring liberal construction of pro se documents); Castro v. United States, 540 U.S. 375, 381-82 (2003) (allowing recharacterization of pro se motion to correspond to its underlying legal basis). I have not considered Dixon's supplemental memorandum in support of her motion because it was filed well after responsive briefs were due. See Pl.'s Supplemental Mem. in Supp. of Pl.'s Mtn. to Strike (doc. 45).

1

For the following reasons, Allstate's motions are granted on the bad faith and fraud counts and denied on breach of contract count. Dixon's motions are denied.[2]

I.  Background

Dixon lives in a four-story row house located on Kater Street, Philadelphia, Pennsylvania with three unrelated persons ("boarders").[3] See Compl. ¶¶ 4-5; Dixon Dep. at 12:12-13:19. Dixon also operates her law practice from the home. See Dixon Dep. at 159:17-160:41; 11/20/11 Tr. at 83:4-13. Allstate provides homeowner's insurance coverage for the property. See Allstate Deluxe Homeowner's Policy, No. 908442703 (Ex. D-5) ("Policy"), at 16-17. The policy provides:

> **4. Our Settlement Options**
> In the event of a covered loss, **we** have the option to:
>
> a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality with a reasonable time; or
>
> b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For A Loss"
>
> **5. How We Pay For A Loss**
> Under **Coverage A – Dwelling Protection**, **Coverage B – Other Structures Protection** and **Coverage C – Personal Property Protection**, payment for covered loss will be by one or more of the following methods . . .
>
> b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. . .

---

[2] I have viewed the facts and any inferences from those facts in the light most favorable to Dixon. See Ray v. Warren, 626 F.3d 170, 173 (3d Cir. 2010).

[3] The house's first floor has a one-car garage, foyer, bathroom, and den with doors opening to a patio. See Dixon Dep. at 14:6-8; 56:7-12 (Ex. D-3). The second floor contains the living and dining rooms, and a kitchen. Id. at 31:11-22. The third floor contains a bathroom, a laundry room, two bedrooms (the "front bedroom" and the "back bedroom"), and a hallway. Id. at 28:15-20. The fourth floor is a master suite with a master bedroom, dressing area, bathroom, and roof-deck. Id. at 26:14-24; 39:7-10.

      c) Building Structure Reimbursement.  **Under Coverage A – Dwelling Protection** and **Coverage B – Other Structures Protection**, **we** will make additional payment to reimburse you for costs in excess of actual cash value if **you** repair, rebuild, or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

      Building Structure Reimbursement will not exceed the smallest of the following amounts:
      1) The replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same premises; . . .

Policy, at 16-17.

The policy does not cover Dixon's boarders because they are not "insured persons."[4] See id. at 2.  The policy also does not cover "any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance."  Id. at 5.

In 2006, a storm caused water damage to hardwood floors on the entire second floor and the third-floor front bedroom.  See Dixon Dep. at 36:17-38:10; 51:6-17.  It also damaged drywall in the: third-floor front bedroom, hallway, and laundry room; second-floor living and dining rooms; and first-floor garage.  See id. at 36:17-38:10.  Allstate authorized $20,556.31 for repairs, including $7,037 for replacement of the second floor and front bedroom hardwood floors.  See 6/11/07 Adjuster Summary (Ex. D-7); 3/14/07 Invoice from Specialty Floors, Inc. (Ex. D-8).  Dixon, however, replaced only the front bedroom floor for $2,169.  See 11/30/11 Tr. at 67:7-68:18 (Ex. D-4); Dixon Dep. at 49:16-51:21.  She also replaced and repainted the drywall on the second and third floors, paying $11,000 to ATM1 Contractors ("ATM").  See 2/6/07 Invoice from ATM Contractors (Ex. D-9) ("2006 ATM Invoice"); 11/30/11 Tr. at 69:1-7.

---

[4] "**Insured person(s)'** – means **you** and, if a resident of **your** household: a) any relative; and b) any dependent person in **your** care."  Policy, at 2.  "**'You'** or **'your'** – means the person named on the Policy Declaration as the insured and that person's resident spouse."  Id.

In 2007, another storm caused water damage to hardwood floors in the front bedroom and hallway. See Dixon Dep. at 69:8-70:5. It also caused drywall damage similar to the first storm, requiring replacement in the front bedroom, hallway, laundry room, living room, and dining room. See id. at 71:23-73:24. Although Allstate authorized $12,667.08 in payment, including approximately $6,000 for floor replacement, Dixon did not replace any flooring. See 5/9/07 Adjuster Summary (Ex. D-10); Dixon Dep. at 79:11-80-2. She paid $12,500 to ATM to replace and repaint drywall on the second and third floors. See Dixon Dep. at 80:5-81:17.

On March 28, 2010 and July 5, 2010, Dixon's home was again damaged by storms. See id. at 82:18-84:17. The resulting repairs are the subject of this litigation. On July 12, 2010, Dixon reported the March loss to Allstate. See id. at 84:18-20; 7/12/10 Allstate First Notice of Loss Snapshot (Ex. D-11), at 2. Two days later, Tracy Miller, an Allstate adjuster, spoke with Dixon and scheduled an inspection. See 11/30/11 Tr. at 75:2-19; 211:3-20; 212:2-21; see also 3/29/11 Claims History Report (Ex. D-12) ("Log"), at 2-3 (attempting calls on July 12 and July 13 before reaching Dixon).

On July 19, 2010, Karen Washko, an independent adjuster assigned by Allstate, inspected the home with Dixon and a representative from ATM. See Dixon Dep. at 93:6-93:17. When Washko arrived, ATM already had removed two walls and the ceiling in the front bedroom, the hallway walls and ceiling, the living room ceiling, and the roof-deck. See id. at 94:5-101:5; 11/30/11 Tr. at 134:22-138:1; 141:10-142:5; see generally 8/16/10 Washko Report Pictures (Ex. D-16). Dixon informed Washko the damage was actually from both the March and July 2010 storms and agreed to report the damage as two losses. See Dixon Dep. at 76:23-77:8. Dixon also told Washko she wanted the floors replaced and that Allstate had authorized payment for her prior losses. See id. at 101:7-23. Dixon did not show Washko any damaged personal contents,

4

including several rugs she had removed from the floors. See id. at 102:3-11; 11/20/11 Tr. at 113:10-113:17.

Relying on Washko's estimate, Allstate authorized partial refinishing of the second floor, drywall installation, and repainting in the amounts of $2,366.61 for the March loss and $4,490.78 for the July loss. See 8/16/10 Adjusters Report (Ex. D-13); 8/19/10 Letter from Allstate to Dixon regarding Settlement Amount for 3/28/10 Loss ("March Estimate Letter"); 8/19/10 Letter from Allstate to Dixon regarding Settlement Amount for 7/5/10 Loss ("July Estimate Letter"); 11/30/11 Tr. at 13:6-8.

Allstate also paid for Dixon's alternative living arrangements while her home was under repair. Allstate initially booked a two-bedroom hotel room with a kitchen for Dixon, but she did not check in because she alleges she was unaware of the reservation. See Dixon Dep. at 113:22-115:9; 8/19/10 Temp. Housing Dir., Inc. Invoice (Ex. D-17). Allstate paid the no-show fee. See 11/20/11 Tr. at 200:18-201:1.

Allstate and Dixon spoke several times about another hotel room, but Dixon was not satisfied with the room after visiting because it was not big enough for her boarders and law practice. See Dixon Dep. at 119:17-120:9; 120:16-23; 11/20/11 Tr. at 81:16-83:13; see generally Log. Although Dixon claims an Allstate representative stated "Find your own accommodations" and hung up on her, see Dixon Dep. at 120:24-121:2, Allstate paid for Dixon to stay with her boarders in a two-bed, two-bath hotel room of her choice for two weeks, see id. at 120:14-15; 121:12-21. Allstate also paid for two weeks of parking for a car Dixon represented was hers, but was actually titled in a boarder's name. See 11/20/11 Tr. at 83:14-84:22; 86:4-87:2.

On September 20, 2010, Dixon forwarded multiple invoices to Allstate, requesting additional reimbursement for: $32,035.00 for hardwood flooring replacement on the second,

5

third, and fourth floors; $3,800.00 for subflooring in unspecified areas; $5,000.00 for moving and storage of furniture; $13,500.00 for drywall and painting on the second and third floors; $796.61 for rug cleaning; and $500.00 for house cleaning. See 9/10/10 Letter from Dixon to Allstate (Ex. D-19); Undated Invoices from ATM (Exs. D-20, D-21, D-24, D-25); Undated Invoice from Zaklan Rugs (Ex. 22); see also Log at 8 (showing communication between Allstate and Dixon regarding dispute over estimate). The 2010 ATM invoice for drywall and painting invoice describes the exact same repairs as the 2006 ATM invoice, but the 2010 price is $2,000 greater. Compare 2006 ATM Invoice, with Undated ATM Invoice (Ex. D-24).

After receiving photographs showing the alleged subflooring damage from Dixon, Allstate contacted Washko for a revised estimate and authorized an additional $616.33 for partial replacement of the hardwood flooring and subflooring. See 10/18/10 Letter from Dixon to Allstate (Ex. D-26); Dixon Dep. at 137:9-138:11; 11/9/10 Supplemental Report (Ex. D-27). Allstate also released $682.26 in holdback/depreciation funds on November 29, 2010, bringing its final estimate for both 2010 losses to $9,265.36. See 11/9/10 Revised Loss Statement (Ex. D-28); 12/20/10 Letter from Allstate to Dixon (Ex. D-29).

When Allstate refused to provide additional funds, Dixon filed her complaint on March 18, 2011. See Compl. Dixon contends that Allstate is obligated under the policy to pay the difference between its estimate and her actual repair cost: $46,405.22. See id. at 12. This includes unreimbursed expenses incurred for drywalling and painting; total hardwood floor and subfloor replacement to second third and fourth floors; furniture removal and storage; rug cleaning; and house cleaning. See 9/10/10 Letter. She also requests $9,800 for three additional weeks of alternative living arrangements and parking. See Compl. at 12.

6

II.     Discussion

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Where there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party. See id. at 250. "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." Id. at 250-51.

A.      Bad Faith - Count I

To establish bad faith,[5] Dixon must prove by clear and convincing evidence that Allstate: (1) lacked a reasonable basis for denying benefits under the policy; and (2) knew of or recklessly disregarded its lack of a reasonable basis in denying the claim.[6] See 42 Pa. C.S. § 8371; Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005); Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994). Clear and convincing evidence is evidence that is "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether [] defendant[] acted in bad faith." Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) (Reed, J.). "Mere negligence or bad judgment is not bad faith." Babayan, 430 F.3d at 137. Rather, Allstate's denial of benefits under Dixon's policy

---

[5] 42 Pa. C.S. § 8371 allows an insured to bring suit against an insurer who acts in bad faith, and permits awards of interest, punitive damages, court costs, and attorney fees.

[6] The parties agree Pennsylvania law controls in this diversity matter.

7

must be "frivolous or unfounded" or based on a "motive of self-interest or ill will." Terletsky, 649 A.2d at 688.

Allstate contacted Dixon immediately after reviewing her claims in July, had her home inspected by Washko within one week, paid for her losses based on Washko's estimate, reinvestigated Dixon's claims at her request, adjusted its estimate to cover more damages based on that reinvestigation, and released any holdback/depreciation funds by November.  See Log; Dixon Dep. at 92:6-93:17; March Estimate Letter; July Estimate Letter; 11/9/10 Supplemental Report; 11/9/10 Revised Loss Statement; 12/30/10 Letter.  Allstate paid for: (1) the cancellation fee when Dixon did not check-in to the first hotel; (2) a fourteen-day stay for Dixon -- and her boarders -- in a two-bedroom suite at the second hotel; and (3) fourteen days of $300-per-day parking for a car Dixon represented was hers.  See 11/20/11 Tr. at 83:14-84:22; 86:4-87:2; 198:18-22; 200:18-201:1.

No reasonable jury could find that Allstate acted with bad faith in refusing to pay Dixon's full claim for benefits.  See Anderson, 477 U.S. at 250.  Although Dixon contests Washko's estimates, Allstate's reliance on the estimate was not frivolous or unfounded.  See Bostick, 56 F. Supp. 2d at 587 (no bad faith when insurer relies on reasonable, but incorrect, expert opinion); Totty v. Chubb Corp., 455 F. Supp. 2d 376, 390 (W.D. Pa. 2006) (same).  Washko observed minor damage to the flooring, but was not able to examine the drywall or the rugs because they were already removed.  See 8/15/10 Adjusters Report; Dixon Dep. at 102:3-11; 11/20/11 Tr. at 113:10-113:17.  She reassessed her opinion when Dixon provided pictures of the subfloor, allowing replacement of the flooring she determined was damaged.  See 11/9/10 Supplemental Report.  No evidence supports Dixon's conclusory assertions of bad faith based on the alleged incompetency of Washko, and such allegations, at best, would reflect mere negligence or bad

judgment. See Compl. ¶ 47(m); Babayan, 430 F.3d at 137. Whether Washko correctly assessed the cause of damage, Dixon has failed to present evidence to substantiate her claim that Allstate acted with dishonest purpose, ill will, or disregard for the truth.[7] See Bostick, 56 F. Supp. 2d at 587.

Allstate's motion for summary judgment on Count I is granted.

B.   Fraud - Count II

In Pennsylvania, the "gist of the action" doctrine bars a plaintiff from bringing a tort claim that merely replicates a breach of contract claim. Werwinski v. Ford Motor Co., 286 F.3d 661, 680 n. 8 (3d Cir. 2002); Erie Ins. Exch. v. Abbott Furnace Co., 972 A.2d 1232, 1238 (Pa. 2009). When a plaintiff alleges that the defendant committed a tort in the course performing a contract, I must determine whether the "gist" of her claim sounds in contract or tort. Erie, 972 A.2d at 1238; see also Mirizio v. Joseph, 4 A.3d 1073, 1080 (Pa. Super. 2010) (to proceed on tort claim, contract must be collateral to alleged tortious action). Torts arise "from the breach of duties imposed as a matter of social policy," while contract actions arise "from the breach of duties imposed by mutual consensus." Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. 2005).

Dixon alleges Allstate committed fraud "[i]n light of [its] obligations . . . as set forth in the policy" by failing to reimburse her the difference between the estimated and actual repair

---

[7] Dixon conclusorily argues Allstate's factual allegations are contradicted by its own exhibits, but does not provide explanation or cite any evidence to support her claim. See Opposition at 4. Rather, she attaches irrelevant and unresponsive exhibits, i.e., two outlines of Pennsylvania bad faith law, see id at Exs. A-B, and requests an in camera showing to "protect work-product privilege with respect to impeachment materials." See id. at 4; Celotex Corp. v. Catrett, 477 U.S. at 325 (party is "normally expect[ed]" to cite evidentiary materials to oppose summary judgment motion). Dixon conflates work product -- documents and tangible things prepared in anticipation of litigation containing her mental impressions, conclusions, opinions, or legal theories -- with exhibits supporting her factual position. Compare Fed. R. Civ. P. 26(b)(3), with Fed. R. Civ. P. 56(c)(1).

costs. See Compl. at 47-52. The policy cannot be viewed as "collateral" to Dixon's claims when her own complaint invokes the contract as the origin for her tort claim. Allstate's obligation to pay Dixon for covered losses does not arise from an independent duty or social policy, but under the explicit terms of their agreement. See Hart, 884 A.2d at 339. Dixon's claim of fraud, therefore, is based on the parties' contract and barred by the gist of the action doctrine. See Erie, 972 A.2d at 1238.

Allstate's motion for summary judgment on Count II is granted.

C.	Breach of Contract - Count III

To establish a breach of contract, a plaintiff must show: (1) the existence of a contract, (2) a breach of a duty imposed by the contract and (3) resultant damages. Miller v. First Liberty Ins. Corp., No. 07-1338, 2008 WL 2468605, at *3 (E.D. Pa. June 17, 2008) (O'Neill, J.) (citing Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa. Super. 2004)).

Allstate argues Dixon's breach of contract claim must be dismissed because she misrepresented and concealed material facts from Allstate. See Def.'s Mem. of L. in Supp. of Mtn. for Summ. J. Counts II & III (doc. 41) ("Def.'s Br."), at 12 . Specifically, Allstate alleges Dixon: (1) misrepresented that the subfloor damage was solely from the 2010 storms; (2) misrepresented that she needed additional alternative living space for her law practice when it was for her boarders; (3) misrepresented her car needed parking when it was not titled in her name; (4) misrepresented to Washko that her 2007 claim was more expensive than the 2010 claim; and (5) concealed her failure to replace the floors following 2006 and 2007 claims. See id.

Factual disputes exist whether Dixon made representations because she testified that: there was no subfloor damage in 2007, she needed the extra space for her law practice, and she

10

views the car as a family car.  See 11/20/11 Tr. at 50:18-24; 81:16-83:13; 86:18-87:2.  Dixon also stated to Washko that she could not locate her copy of the 2007 estimate.  See 7/20/10 Letter from Dixon to Washko (Ex. D-31).  A reasonable jury could find she did not make an affirmative misrepresentation.  See Anderson, 477 U.S. at 248.

Similarly, it is disputed whether Dixon actively concealed that her floors had not been replaced.  Although Dixon told Washko Allstate had previously paid to replace her floors and showed her the 2006 estimate for floor replacement, it appears Washko never asked whether Dixon actually had made the floor repairs.  See Dixon Dep. 102:14-103:7; see generally 11/20/11 Tr. at 133-193.  Dixon also mentioned the house's "original" floors were from 2001 in a letter to Allstate.  See 9/10/10 Letter; see also 11/9/10 Supplemental Report (Washko noted "[Dixon] points out that the floors were from 2001 or 2002, however . . . [she] was paid for new floors . . . in 2006.").  Although the disputed facts are not overwhelming, a reasonable jury could find for Dixon.  See Anderson, 477 U.S. at 255; Cooper Indus. Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 445 (2001) (decision of disputed question of fact is assigned to the jury).

Allstate also argues Dixon cannot succeed because she is missing proof of damages, a material element of her claim.  See Def.'s Br. at 16.  Allstate argues Dixon did not submit an expert report or provide evidence from her contractor.  See id.  Dixon may testify as a lay witness, however, and describe her personal knowledge of the condition of the house, which also housed her business, before and after the 2010 storms.  See Fed. R. Evid. 602; 701.  Even absent the imprimatur of "expert" testimony, Dixon may be able to enumerate items of damage and the anticipated costs of repairs.  See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175 (3d Cir. 1993) (lay witness' opinions regarding future lost profits were sufficient to support jury finding of future damages); Aunt Sally's Praline Shop, Inc. v. United Fire & Cas. Co., Inc., 418 F. App'x

11

327, 331-32 (5th Cir. 2011) (lay witness may testify to potential net income for damages purposes); see also Ziegler v. Easton Suburban Water Auth., 43 A.3d 553 (Pa. C.C.P. 2012) (lay witness contractors allowed to testify to scope and cost of repairs to home for damages purposes); but see Donlin v. Philips Lighting N.A. Corp., 581 F.3d 73 (3d Cir. 2009) (damages testimony must be confined to personal knowledge and cannot stray into the ambit of technical or specialized knowledge).

Allstate's motion for summary judgment on Count III is denied.

D.   Dixon's Motions

Dixon cites virtually no legal authority in support of her myriad frivolous requests.

   i)   Motion for Reconsideration

Dixon seeks reconsideration of my order barring her from: (1) calling witnesses from ATM at trial, and (2) permitting Allstate to seek an adverse-inference instruction for the plaintiff's failure to call these witnesses. Opposition, at 5-6. Dixon contends she has no relationship with the contractors and could not produce them for deposition, but requests I allow her to attempt to arrange their depositions. Id. at 8.

Mere days before discovery ended, I entered this order at the request of the parties because Dixon had represented she did not know any ATM representatives' whereabouts and could not produce them from a foreign country.[8] I also amended the order, as requested by Dixon. See 9/11/12 Am. Order (doc. 36). Dixon, however, somehow made contact with an ATM representative one month after discovery ended, see Opposition, at 6-7, and now wishes to reopen discovery one month before trial.

---

[8] Dixon was represented by counsel at this time.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Marshall v. Fenstermacher, No. 04-3477, 2007 WL 2892938, at *5 (E.D. Pa. Oct. 2, 2007) (Pratter, J.) (citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). Dixon fails to identify any "manifest errors of law or fact." She does not identify "newly discovered evidence"; rather, she agreed she would not call ATM at trial if she could not produce them by the discovery end date. Nor does she provide any legal argument for why I should reopen discovery well after the deadline has passed.

I deny Dixon's motion for reconsideration.

### ii) Motion for Direction from Court

Dixon seeks "direction from the [c]ourt" as to what further notice, if any, she must give to Allstate for her claim that it has engaged in ongoing bad-faith tactics during her lawsuit and summarily requests discovery. Opposition, at 8-9. She offers no meaningful explanation or legal support for her request. See id. Seeking such legal advice from the trial judge is inappropriate. I deny Dixon's motion.

### iii) Motion to Disqualify Allstate's Counsel

Dixon seeks to disqualify Allstate's counsel because she: (1) is a "necessary" witness to the case,[9] and (2) violated professional and court rules. Opposition, at 9. Dixon, however, fails to explain -- and I cannot see -- how Allstate's counsel's testimony is relevant to her remaining breach of contract claim. Dixon also does not specify how Allstate's counsel violated Federal

---

[9] "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," unless certain exceptions are met. Pa. R. Prof'l Conduct 3.7(a).

Rule of Civil Procedure 11 or the Rules of Professional Conduct.[10] See id. at 9. Her unprofessional and disrespectful attacks on opposing counsel and the judicial process lack any arguable basis either in law or in fact.[11] I deny this motion as frivolous, and caution her to cease filing groundless pleadings. See Fed. R. Civ. P. 11.

    iv)    <u>Motion to Compel Disclosure of Allstate's Legal Theories</u>

Dixon complains[12] Allstate has presented various legal defenses to her claim and requests that I require Allstate to notify her which legal theories it will offer at trial. Opposition, at 9-11. Dixon, however, is aware of Allstate's defenses from its Answer, summary judgment motion, and soon-to-be-filed pretrial memorandum.[13] Her motion to compel disclosure lacks any arguable basis either in law or in fact. I deny it as frivolous.

    v)    <u>Motion to Bifurcate</u>

Dixon's motion to bifurcate her trial is moot because I have granted summary judgment in favor of Allstate on her bad faith and fraud claims. See Opposition, at 11; cf. Fed. R. Civ. P. 42(b) (authorizing separate trials of one or more separate issues or claims).

---

[10] It is difficult to decipher Dixon's motion, but it appears she believes Allstate's counsel is hiding evidence based on the demeanor of another judge who conducted a settlement conference. See Opposition, at 9. I deny Dixon's motion to the extent that she is inappropriately seeking to compel Allstate to divulge statements made during the settlement conference.

[11] As an attorney barred in Pennsylvania, Dixon is bound by the Pennsylvania Code of Civility, which directs that "[a] lawyer should not bring the profession into disrepute by making unfounded accusations of impropriety or personal attacks upon counsel and, absent good cause, should not attribute improper motive or conduct to the other counsel." § 99.3(6).

[12] In a four-hundred-and-two-word sentence.

[13] The parties also attended arbitration.

vi) <u>Motion for Evidentiary Hearing</u>

Dixon's request for an evidentiary hearing regarding her motions is denied as unnecessary given my disposition of the other motions in this opinion. <u>See</u> Opposition, at 13.

vii) <u>Motion for Extension to Offer Supplemental Argument</u>

I deny Dixon's extension to supplement her opposition to Allstate's summary judgment motion. <u>See</u> Opposition, at 13-14. Dixon was well-aware of the close of discovery and summary judgment deadlines when she chose to represent herself.

An appropriate order follows.